Herman A. "Chuck" Watson III
Megan M. Moore
WATSON LAW OFFICE, P.C.
101 East Main Street, Suite C
Bozeman, Montana 59715-4796
Telephone:  (406) 586-4707
Facsimile:(406) 582-0836
Email: megan@watlawoffice.com

Attorneys for Defendant,
    *Dora Sandra Gomez*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION
### * * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DORA SANDRA GOMEZ, *aka Bella Gomez*<br><br>Defendant. | Cause No. CR-21-31-BU-DLC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

COMES NOW, the Defendant Dora Sandra Gomez., by and through her counsel Herman A. "Chuck" Watson III and Megan M. Moore of Watson Law Office, and hereby respectfully submits the following memorandum for the Court's consideration at sentencing on March 30, 2022.

#### I.   INTRODUCTION

Pursuant to a plea agreement with the United States, Dora Sandra Gomez (hereinafter "Dora") pled guilty to the Superseding Information in this matter, which charges the crime of interstate communication of a threat, in violation of 18 U.S.C. § 875(c). Doc. 13. This offense carries a maximum punishment of five years imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment. In exchange for Dora's guilty plea to the Superseding Information, the Government will move to dismiss the Indictment at sentencing pursuant to the Plea Agreement. *Id*.

The Plea Agreement also specifies that the appropriate base offense level will be decreased by two levels for acceptance of responsibility, pursuant to USSG §3E1(a), unless the defendant is found to have obstructed justice prior to sentencing, pursuant to USSG §3E1.1, or acted in any way inconsistent with acceptance of responsibility. The United States will move for an additional one-level reduction, pursuant to USSG §3E1.1(b), if appropriate under the Guidelines. Finally, the United States agrees to recommend that the defendant receive a sentence of probation for a term of not more than five years. *Id.*

The Presentence Investigation Report ("PSR") determined Dora's base offense level to be 12 and the total offense level to be 6 after applying the acceptance of responsibility adjustment under USSG §3E1.1(a) and a 4-level downward

adjustment for Dora's specific offense characteristics under USSG §2A6.1(b)(6)). PSR ¶ 19 – 27. With no prior criminal history, Dora's criminal history category is I. PSR ¶ 32. Her guideline imprisonment range is zero to six months. PSR ¶ 51. A sentence of imprisonment is not required. *Id.*

Dora is eligible for a sentence of probation for a term of at least one year but not more than five years, given her offense level is six. PSR ¶ 56, USSG §5B1.2(a)(1). Since the applicable guideline range is in Zone A of the Sentencing Table, a condition requiring a period of community confinement, home detention, or intermittent confinement may be imposed, but is not required. PSR ¶ 57, USSG §5N1.1, comment. n.1(a). The fine range for this offense is from $1,000 to $9,500. USSG §5E1.2(c)(3). PSR ¶ 60, USSG § 5E1.2(c)(3). There are no guideline provisions for restitution. Dora's offense of conviction is a class D Felony, thus the guideline range for a term of supervised release is 1 year to 3 years. USSG §5D1.2(a)(2), PSR ¶ 54. The Court has the authority to vary further downward pursuant to the 18 U.S.C. § 3553(a) factors and any applicable USSG provision.

## II. SENTENCING MEMORANDUM

### A. Unresolved PSR Objections

The only outstanding PSR objection references ¶ 46 which addresses Dora's licensure as a Speech-Language Pathologist in the State of New Mexico. Dora had previously provided a license to the PSR writer which expired on January 30, 2021.

Since then, her license has been renewed and is current until January 30, 2023; however she does yet have the updated copy. She will provide a current copy to the Court at the time of sentencing.

### B. 18 U.S.C. § 3553(a) and the USSG

Courts have broad discretion to consider every unique aspect of each case and each defendant when fashioning an appropriate sentence. The United States Supreme Court has emphasized that Congress "could not have been clearer" in drafting 18 U.S.C. § 3661, which directs that "'no limitation . . . be placed on the information concerning the background, character, and conduct' of a defendant that a district court may 'receive and consider for the purpose of imposing an appropriate sentence.'" *Pepper v. United States*, 562 U.S. 476, 490-491 (2011) (quoting 18 U.S.C. § 3661).

A careful consideration of the factors enumerated in 18 U.S.C. § 3553(a) supports a sentence of minimal probation for Dora. The Guideline range calculated per the USSG is only one of those factors. "While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account when arriving at an appropriate sentence." *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009) (quoting *Unites States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)). The Guidelines factor may not be given more or less weight than any other of the § 3553(a) factors. *Id.* "So while the Guidelines are the 'starting

point and initial benchmark' and must be 'kept in mind throughout the [sentencing] process,' the Guidelines range constitutes only a touch-stone in the district court's sentencing considerations." *Id.* District courts "must consider both the seven § 3553(a) factors and the Guidelines when imposing sentence." *Id.*

A sentencing court has discretion to depart downward from the Guidelines if it finds "mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." *United States v. Brown*, 985 F.2d 478, 481 (9th Cir. 1993) (quoting *United States v. Lira-Barraza,* 941 F.2d 745, 746 (9th Cir. 1991) (*en banc*)). Sentences imposed "outside the Guidelines are subject to the same standard – i.e., abuse of discretion – as those within the Guidelines." *Id.* (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)). "The Supreme Court has emphasized that 'extraordinary circumstances' are not a prerequisite to upholding a sentence outside the Guidelines." *Autery*, 555 F.3d at 872 (quoting *Gall*, 552 U.S. at 47.) The court may depart downward if mitigating circumstances are present, but those circumstances need not be "extraordinary."

The primary directive of § 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the following purposes:

<200b>
<200b><200b><200b><200b><200b><200b><200b>

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A) – (D). In addition to the USSG and the § 3553(a)(2) factors above, sentencing courts must also consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; any pertinent policy statement; the need to avoid unwarranted sentence disparities among defendants with similar records; and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1), (3), (5) – (7).

  Dora respectfully submits that the Court consider in particular the following factors and mitigating circumstances in determining the type and length of sentence that is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**18 U.S.C. § 3553(a)(1): The Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

  Dora Gomez is a 64-year-old Speech-language Pathologist from New Mexico. This Court will read the accounts of many of Dora's close friends and family members, all of whom describe Dora with love, appreciation, and admiration. *See* Notice of Filing Sentencing Letters, Doc. 27. They describe the various jobs Dora

has held throughout her life, her hard work ethic, her dedication and contributions toward bettering her community, and her compassion for others. Counsel need not belabor these qualities here as they are abundantly apparent in Dora's history and relationships. Dora has no criminal history.

In December 2018, Dora Gomez met Andy Pershern on an online dating website and began traveling back and forth to Mr. Pershern's residence in Divide, Montana. Mr. Pershern was very active in the Montana Trapper's Association ("MTA") and although Dora did not know anything about the MTA prior to this relationship, she began attending events held by the organization. She was so well-liked that she was asked to help plan the April 4, 2020 banquet and June 2020 Rendezvous events in Butte, Montana (both events were ultimately canceled due to COVID).

Dora ended the relationship with Mr. Pershern shortly before the start of COVID in March 2020. She had become uncomfortable with certain things about Mr. Pershern, including the irresponsible manner in which he trapped, and several instances in which he was abusive towards Dora and took advantage of her financially. The relationship did not end amicably. Mr. Pershen threw Dora's belongings into his driveway and refused to return money she had loaned him and valuable personal items belonging to her, including an opal gemstone passed down to Dora by her grandmother. Dora has recovered neither to this day. Dora ultimately

spent over $20,000 of her own money supporting Mr. Pershern, paying for items from food to his electric bill. Mr. Pershern repaid her by mentally and physically abusing her, stealing from her, and refusing to help her obtain medical attention when she was injured as a result of his abuse and alone in Montana.

Dora's actions the night she placed the phone call at issue in this case have caused her the greatest shame and embarrassment she has ever known. On the day of the offense, Dora was processing emotions from multiple phone calls she had received from Mr. Pershern over the weekend. She was still upset over how she had been exploited and perturbed at the idea that her loan would not be repaid and her grandmother's opal was likely lost. She gave in to an urge to retaliate. She knew that trapping was the only thing Mr. Pershern cared about, and she googled the phone number for the event center where she knew the MTA banquet was being held. She came up with a story on an impulse, warned that some people might get hurt. She has acknowledged that this lapse in judgment was serious, selfish, and inappropriate.

Dora has a lifelong history of exhibiting the exact opposite characteristics. Dora cared for her mother, Mary Gonzales, after she suffered a stroke, for 12 years before she passed away. Dora has seven siblings which have unfortunately become distant as they did not approve of her relationship with Andy Pershern. Dora does not have a history of chemical dependency or alcohol abuse. She enjoys an occasional glass of wine or beer, however the date of the offense was the last day

she consumed alcohol. Dora has worked with children for the majority of her career and is a valued staff member at Reginald Chavez Elementary School in New Mexico.

**18 U.S.C. § 3553(a): Restitution**

There are no guideline provisions for restitution. Dora is sensitive to and feels great remorse for disrupting the night of not only Mr. Pershern, but of the other attendees of the MTA banquet who had done nothing to her; in fact, many were and remain her friends. That is something Dora will have to live with. She has agreed to pay restitution as deemed appropriate by this Court.

The Victim Impact Statement provided by Ronald W. Johnson (Frontier Event Center), however, contains several inconsistencies that the Court should be aware of in making that determination. Mr. Johnson states that the evacuation of the event center took place at 6:40pm (PSR ¶ 15), which contradicts the reports of the FBI and Dillon Police stating that the call occurred at approximately 7:35pm. PSR ¶ 8. Mr. Johnson wrote that people were evacuated and "due to the intense cold suffered a lot later in the week due to the flu and colds." PSR ¶ 15. Weather resource channels show the history of the temperatures on May 8, 2021 to be around 40 degrees at 7:30 p.m.

Mr. Johnson's statement also claims that there were 435 people in attendance, while the statement given to law enforcement by Trina Sue Davis, Membership Secretary for Montana Trappers Association, states that the event was attended by

approximately 130 people. Mr. Johnson also includes as part of total loss attributed to Dora prime rib and desserts that were to be served for dinner, but that he claims were wasted because the evacuation occurred before dinner was served. However, the FBI and Dillon police reports state that evacuation occurred after dinner was served. Ms. Davis, the MTA secretary, recalled in her statement to law enforcement "finishing dinner" when she was notified of the call. (*See* Statement of Trina Sue Davis, 7/6/2021, USAO – 118.) Notably, Ms. Davis, who is a Victim Specialist for Rosebud County, notes that "she did not notice anyone who seemed emotionally traumatized" that night and assumed herself that the call was a hoax. *Id.* Mr. Johnson fails to note that the event resumed in the same space the next day, and attendees were able to complete the planned auction and continue to patronize the establishment. Several social media posts made afterwards reference the ultimate success of the event.

### III.  CONCLUSION

Dora Gomez has never expressed anything but remorse for her actions that night. She respectfully requests that the Court consider the above factors and circumstances in crafting a sentence that is sufficient but not greater than necessary, and that the Court find cause to follow the recommendations of both parties for a probationary sentence. The Court has the authority to sentence Dora to probation, and such a sentence is warranted in this case.

Respectfully submitted this 22nd day of March, 2022.

By: /s/ Megan M. Moore
Megan Moore
Attorney for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on 22nd day of March, 2022, I served a true and correct copy of the foregoing document via the following means to the following:

1. Jeffrey K. Starnes
   Assistant United States Attorney
   Method of Service: CM-ECF

2. Clerk, United States District Court
   Method of Service: CM-ECF

3. Dora Sandra Gomez
   Method of Services: Mail

By: _/s/ Megan M. Moore_____